172                    244 FEDERAL REPORTER

EXCELSIOR STEEL FURNACE CO. v. F. MEYER & BRO. CO.

(Circuit Court of Appeals, Seventh Circuit. April 10, 1917. Rehearing
Denied May 17, 1917.)

No. 2419.

PATENTS ⬮⟳328—VALIDITY AND INFRINGEMENT—HOT-AIR PIPES.
    The Scherer patent, No. 724,210, for hot-air pipes having double walls,
    claims 1 and 2, covering the telescopic adjustment of the sections, are
    void for prior public use by another. Claims 3, 4, and 5 disclose invention
    and are valid; also *held* infringed.

Appeal from the District Court of the United States for the Northern Division of the Southern District of Illinois.

Suit in equity by the Excelsior Steel Furnace Company against the F. Meyer & Bro. Company. Decree for defendant, and complainant appeals. Reversed.

Benjamin T. Roodhouse, of Chicago, Ill., for appellant.
Winslow Evans, of Peoria, Ill., for appellee.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

MACK, Circuit Judge. This is an appeal from the decree of the District Court dismissing, for want of equity, a bill brought to restrain the alleged infringement of all the claims of letters patent No. 724,210, for hot-air pipes, issued March 31, 1903, to appellant, as assignee of Albert G. Scherer, upon an application filed April 19, 1900.

The patent relates to the construction of double wall hot-air pipes used to conduct and distribute hot air from the furnace to various parts of the house or building. Double wall pipes held in spaced relation, so as to provide between the outer and inner wall a narrow air chamber serving as an insulator to prevent both radiation of the heat as it is conveyed and its direct transmission to and overheating of the outer pipe, with the consequent danger of fire, are found in the art prior to the patent in suit. What is claimed as new and useful in the invention is: First, the means of telescopically adjusting the sections of the pipe to conform to any of the manifold lengths that may be required in the installation of such pipe, without the expense and the trouble of having sections manufactured or cut to the exact size desired; second, an inwardly turned bend or crimp in the corners, which makes it possible for the walls of the inner pipes to be pressed bodily inwards by reason of their yielding character while the fitting is effected.

Claims 1 and 2 cover the telescopic adjustment; claims 3, 4, and 5, the inwardly turned corner or crimp. These latter claims read as follows:

    3. A flat-sided sheet-metal pipe-section, having its corners formed with inwardly turned compressible bends, whereby the flat sides of the pipe are inwardly yielding.
    4. As a means for jointing telescopically sheet-metal pipe-sections, the combination of two such sections composed of flat walls meeting each other at

⬮⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

angles, the inner pipe having its corners formed with inwardly-turned compressible bends.

5. A flat-sided section for hot-air stacks, consisting of inner and outer walls or pipes and a connecting diaphragm, the corners of said pipes being formed with inwardly-turned compressible bends.

Claims 1 and 2 must be held void, because the evidence clearly and satisfactorily shows that pipes embodying the invention claimed therein were sold by the defendant prior to the filing of the application for the patent in suit. The defendant's manager, superintendent, foreman, and salesman all testify to the use prior to 1898 of a double wall, telescopically adjustable pipe; and there was introduced in evidence a section of pipe which was testified to by them to be the original one made in 1896–97 by the superintendent and preserved by him. Two of the witnesses, the manager and the foreman, recalled that some of the first work given to an apprentice who came to the firm in 1898 was upon sections of this style of pipe, and that this sort of work had been done at the factory at least one year before that time. Their testimony is strengthened and corroborated by that of the apprentice. The superintendent remembered that he made and designed the device offered in evidence in the winter of 1896–97, after an order for pipe with a slip joint—that is, a pipe telescopically adjustable—had been taken by defendant's salesman, who was identified as having sent in the first order by both the superintendent and foreman. He testified that at least three years before 1900, when he left the employ of the defendant company, he took an order for a slip joint pipe from a dealer who was trying to please a lady; that he had talked with her, and she had impressed herself upon his memory by reason of her extraordinary meticulosity.

Intrinsically, there is nothing in this evidence that is improbable or open to suspicion or doubt. Although naturally, as to these matters, which occurred over 18 years ago, the evidence in some respects is lacking in detail and explicitness, it is on the whole cumulative, corroborative, and consistent. The two devastating fires that destroyed the defendant's factory satisfactorily account for the failure of the defendant to produce the records of the occasional sales of such pipe alleged to have been made by it prior to 1900, and the preservation of the original pipe sections is satisfactorily explained by the testimony that the fires did not reach the place where they were kept. The trial judge found the witnesses to be men of character and standing, and their testimony entirely credible. We cannot say that he erred in expressly finding that the proof established the prior use beyond a reasonable doubt.

The evidence does not, however, establish the prior public use of inwardly-turned compressible bends, whereby the sides of the pipe are inwardly yielding. Although the defendant's manager, superintendent, foreman, and apprentice all testified that it was about 1898 when the defendant first began to make this pipe with a short crimp in the upper corners of the pipe section, it does not appear that such a crimp could perform the peculiar function of the longer crimp in the patented structure. None of the defendant's witnesses were able to fix definitely

the date of the first use by that company of inwardly-turned bends extending down practically the whole length of the section.

The use of the inwardly-turned bend or crimp in the patented structure is more than an ordinary mechanical expedient to reduce the size of the inner telescopic member, and thus to enable the same size pipe to be used for both the entering and the entered telescopic walls. A crimp for that purpose is found in prior patents in the closely allied art of stovepipes. In Scherer's device, however, the crimp also enables the telescopic fitting to be more readily effected, by making the walls of the inner pipe yielding, and thus capable of being temporarily pressed bodily inwards without injury to the walls or change in the spaced relation of the outer and inner walls.

This function of the crimp is of peculiar significance and value in the art to which Scherer contributed. Double wall hot-air pipe is uniformly made rectangular in shape in order that it may be installed between the studding in the walls of buildings. While round pipe, such as stovepipe, by reason of its form, can resist considerable compression, rectangular pipe is weaker and more liable to lose the regularity of its form, and to become permanently bent in when subjected to compressive force. For this reason spacers are usually employed, if not required, with flat pipe, when the crimp or inwardly-turned corner is not utilized in order to insure effective insulation.

In view of the peculiar utility of the crimp on Scherer's structure, the Patent Office was fully warranted in allowing claims 3, 4, and 5. Defendant's device has the same crimp, with the same purpose and effect. Infringement is clearly established.

The decree must be reversed as to claims 3, 4, and 5, and the cause remanded for further proceedings in accordance with the views herein expressed.